SELL (Jerald F.), by Guardian *ad litem,* Respondent, v. MILWAUKEE AUTOMOBILE INSURANCE COMPANY and another, Appellants. [Case No. 15.]

SELL (William), Respondent, v. SAME, Appellants. [Case No. 16.]

MOORE, by Guardian *ad litem,* and another, Respondents, v. SAME, Appellants. [Case No. 17.]

COOPMAN, by Guardian *ad litem,* and others, Respondents, v. GREEN and another, Appellants. [Case No. 18.]

KIHL, by Guardian *ad litem,* and another, Respondents, v. SAME, Appellants. [Case No. 19.]

GREEN, by Guardian *ad litem,* and another, Appellants, v. SELL (Jerald F.) and another, Respondents. [Case No. 20.]

*October 1—October 30, 1962.*

512

For the appellants there was a brief by *W. T. Kuchenberg* and *Harry P. Hoeffel,* both of Appleton, and oral argument by *Mr. Hoeffel.*

For the respondents there was a brief by *O'Leary, Joyce & Goggin* of Neenah, for the Sells; by *DiRenzo & Bomier* of Neenah, for the Coopmans; and by *Ray J. Fink* of Menasha, for Kihl; and oral argument by *Mr. Daniel Goggin, Mr. Jerome T. Bomier,* and *Mr. Fink.*

DIETERICH, J. The accident occurred on March 27, 1960, at about 1:10 a. m., east of Menasha in Winnebago county. Jerald F. Sell, seventeen years of age, was driving his father's car west on Highway 114. Sell was accompanied by three other seventeen-year-old boys, John Moore, Richard Lee Coopman, and David Kihl. At Kihl's suggestion they stopped to see his girl friend, who was at a home

located on the north side of the highway. When Sell, Moore, and Coopman decided to leave they found that Sell was unable to start the car. The lights were dim and the engine turned over slowly, leading Sell to believe that the battery was dead. Kihl was called from the house and Moore, Coopman, and Kihl then pushed the car, Sell steering, backward onto Highway 114. The boys then pushed the car forward in a westerly direction on Highway 114 in an attempt to start the engine. It was at this time that the collision occurred.

Sell testified that the car he was driving was completely on the shoulder at all times, that the shoulder was about nine feet wide and covered with loose gravel. Sell stated that he saw two cars approaching him from the west about one-half mile away. The second car in line started to pass the first when suddenly Sell heard brakes squeal and saw headlights come right at him. After the head-on collision his father's car was in the ditch with the entire front end pushed in.

Moore testified that he pushed the Sell car from the rear at the right side. His feet were in gravel and it was his opinion that the entire Sell car was on the shoulder. On cross-examination Moore admitted that on an adverse examination on August 3, 1960, he had answered that he did not know whether any part of the Sell car was on the concrete when the accident occurred. He stated further that according to the side of the car he was on, he did not know whether the Sell car was partly on the concrete.

Coopman testified that he pushed from the rear at the center of the Sell car. He looked down as he pushed and saw gravel. It was his estimate that all four wheels were on the shoulder. On cross-examination Coopman was asked: "Could you tell definitely now whether or not the left wheels of the automobile were on the concrete or not? *A.* I

couldn't be positive, but from where I looked at it it looked like it was." This answer is vague and whether or not it contradicts his prior testimony that all four wheels of the Sell car were on the gravel is speculative.

Kihl testified that he pushed the Sell car from the left rear. All the wheels were on the shoulder and his feet were in the gravel as he pushed. The Sell car was dark green. On cross-examination it was established that a deposition was taken from Kihl on December 29, 1960, before a court commissioner. At that time Kihl testified positively that the two left wheels of the Sell car were on concrete when the collision occurred; that about one half of the Sell car was on the concrete.

Sell, Moore, Coopman, and Kihl all testified that they did not see any lights burning on the Sell car before the accident. Only Sell, the driver of the automobile, saw the Green automobile before the collision.

Edward L. Green, also seventeen years of age, driving his father's car, hit the Sell car while passing another automobile going in the same direction. Green's testimony is that he was traveling 45 miles per hour in an easterly direction on Highway 114. His lights were on low beam as he started to pass the car ahead when he noticed that his lights were reflected off the grill of a car in front of him, that he saw the Sell automobile two or three seconds before he hit it and that he was about 100 feet away when he saw the Sell car and applied his brakes. His speed when he passed was about 40 miles per hour. The westbound car had its lights off and was partly on the shoulder and partly on the pavement. He applied the brakes and then collided with the westbound vehicle, damaging his father's car from the middle of the grill to the left fender. At no time did his car leave the concrete. On cross-examination Green testified that the car he was overtaking was closer to the center line than the south side of the lane.

Ronald Blackwell was the driver of the car which was being passed when the accident happened. His testimony is that he was driving east on Highway 114 between 30 and 35 miles per hour and that it was a dark night. His car was about three or four feet from the center line. At about the time the following vehicle started to pass him, Blackwell noticed the other vehicle, a dark-colored car, 40 to 45 feet distant on the opposite side of the road without its lights on. He did not think there would be sufficient room between his car and the unlighted car for the overtaking vehicle to drive between them, so Blackwell stepped on the gas and swerved to the right in order to avoid being hit in the accident. He stated that enough of the unlit car was on the pavement so that another car could not pass between them. When the collision occurred Blackwell estimated that the rear bumper of his car was even with the rear bumper of the unlighted car.

Blackwell's wife, Sandra, was sitting beside him in the front seat of the automobile. She testified that the Sell car was a dark color, unlighted, half on the concrete, that it was a dark night, there were no streetlights, and that she did not see the Sell car until 20 or 30 feet from it. She also said that they were traveling 30 to 35 miles per hour, close to the center line of the highway, that there was not room for the Green car to go between them and the Sell car, and that her husband swerved slightly to the right. When the accident occurred the back bumper of the car in which she was riding was about even with the bumper of the Sell automobile.

Dennis Wilke, a passenger in the Blackwell car, was sitting in the left rear seat. His testimony is that he saw the unlighted car when they were only 20 to 30 feet away, that such car was half on the concrete and that it was a dark night. When the collision occurred he thought that the car

in which he was riding was three feet east of the Sell automobile.

Wilke's wife, Shirley, was a passenger in the Blackwell car sitting in the right rear. Her testimony was indefinite except as to the position of the Blackwell vehicle at the time of the collision which she said was five or six feet east of the unlighted Sell car.

Officer Misch who investigated the accident testified that he paced off the highway and it was about 33 feet wide. The road surface was wet though the weather was clear. The accident occurred in the country. It was dark and there were no streetlights. On a diagram Misch indicated that the Sell car was in a ditch after the accident and the Green car was placed with its left rear at the center line of the highway.

The record discloses that medical expenses, hospital expenses, and car loss were stipulated, leaving questions as to negligence and damages for the jury.

The jury in its special verdict found that the four boys, Sell, Moore, Coopman, and Kihl were each chargeable with 70 percent causal negligence as compared with Edward L. Green's assessed causal negligence of 30 percent.

The jury assessed damages to Jerald F. Sell at nil; to John Moore at $750; to Richard Lee Coopman at $5,000; to David Kihl at $1,200; and to Edward L. Green at $750.

The trial court in its memorandum decision stated that the conduct of Green in striking the Sell vehicle head on was completely unexplainable. It was the court's opinion that the evidence would justify the court in finding Green causally negligent as a matter of law, and that his negligence was of a high degree, and that the placing by the jury of but 30 percent of the aggregate causal negligence to Green was incomprehensible and clearly constituted a miscarriage of justice. Further, the court was of the opin-

ion that the fact that the jury found $750 damages for Green and "Nil" for Sell for similar injuries, was completely inconsistent with reason or justice and reflected a feeling of resentment or prejudice on the part of the jury toward minor "teen-agers" upon the highway late at night.

Although the trial court was of the opinion that the jury's apportionment of negligence was unexplainable, the court did not find that Green was guilty of at least 50 percent of the aggregate negligence as a matter of law. This court has held that: "A trial court has the right in the exercise of its discretion to order a new trial in the interest of justice when a jury's comparison of negligence is against the great weight of the evidence even though it cannot be held as a matter of law that one of the tort-feasors was guilty of at least 50 percent of the aggregate negligence." *Guptill v. Roemer* (1955), 269 Wis. 12, 19, 68 N. W. (2d) 579, 69 N. W. (2d) 571.

In the instant action the trial court was impressed with the fact that taking the testimony most advantageous to Green, resulted in a conclusion that there was a lane about 16½ feet wide between the Sell car and the Blackwell car. The trial court based its conclusion on these facts that the road was 33 feet wide with two lanes approximately 16½ feet wide. The Blackwell car was approximately three or four feet from the center line and the Sell car was probably half on the concrete, or some three or four feet thereon. Therefore, a lane was left for Green to negotiate of some 16½ feet between the other two vehicles. It should be recognized, however, that there is testimony that it was a dark night, that the space for the two cars may have appeared narrow, and that the space between the Blackwell car and the Sell car did appear narrow. Mr. and Mrs. Blackwell so testified and the jury could consider their testimony in arriving at an apportionment of negligence between Green and the other parties in these six actions.

The only negligence that the jury could attribute to Green in this accident would necessarily be based on his decision to stop, rather than attempt to pass between the Sell car and the Blackwell vehicle, Comparing Green's negligence in this respect to that of the four boys who pushed an unlighted car onto the highway at night is a jury question. The jury's apportionment of 30 percent negligence to Green and 70 percent negligence to Sell, Moore, Coopman, and Kihl is not unreasonable.

As to damages, the jury answered all questions to the satisfaction of the trial court except the question as to damage for personal injury suffered by Jerald F. Sell, which the jury answered by the word, "Nil."

Sell's injury consisted of a cut on the left knee which was repaired by six stitches. The stitches were removed in two weeks, but the knee gave him some discomfort for a period until about three months prior to the trial.

Edward L. Green was awarded $750 damages for personal injuries consisting of lacerations involving the tip of his nose on the right, the nasal labial fold on the right, and his left knee in two places. Green's nose injury was characterized as painful by his attending physician, who also stated that Green would have no ill effects except for whatever cosmetic residuals remained.

The trial court drew attention to the fact that Sell received no money from the jury for his injury, while Green received $750 for injuries he received. The trial court characterized the injuries of Green as no more serious than those sustained by Sell. However, Green sustained a laceration to the nose which left a scar as well as a knee injury similar to that complained of by Sell.

The rule is that where a jury has answered other questions so as to determine that there is no liability on the part of the defendant, which finding is supported by credible evidence, the denial of damages or granting of inadequate

damages to the plaintiff does not necessarily show prejudice or render the verdict perverse. *Schulze v. Kleeber* (1960), 10 Wis. (2d) 540, 103 N. W. (2d) 560; *Dickman v. Schaeffer* (1960), 10 Wis. (2d) 610, 103 N. W. (2d) 922; and *Goelz v. Knoblauch* (1943), 242 Wis. 186, 7 N. W. (2d) 420.

In the special verdict the jury awarded damages based on personal injuries to Moore of $750, to Coopman of $5,000, and to Kihl of $1,200. All the parties to this action were seventeen years of age at the time of the collision, including Green.

We determine that the awards made by the jury do not sustain the trial court's conclusion that the special verdict by failing to award any damages to Sell "reflects a feeling of resentment or prejudice on the part of the jury toward minor 'teen-agers' upon the highway late at night; under no other theory can the verdict be explained."

Our review of the record fails to disclose any ground to support the trial court's orders setting aside the verdict of the jury in each of the six cases, and granting a new trial in the interest of justice. *Field v. Vinograd* (1960), 10 Wis. (2d) 500, 103 N. W. (2d) 671; *Dowd v. Palmer* (1944), 245 Wis. 593, 15 N. W. (2d) 809; and *Anderson v. Eggert* (1940), 234 Wis. 348, 291 N. W. 365.

*By the Court.*—The orders granting a new trial are reversed, and the verdict of the jury in all six cases reinstated.

CURRIE, J. (*concurring*). The sole issue on this appeal is whether the trial court abused its discretion in ordering a new trial in the interest of justice, after determining that the answers of the jury to the comparative-negligence questions of the verdict were against the great weight of the evidence. The test which this court should apply, in passing on the abuse-of-discretion issue, is whether there existed any reasonable basis for the trial court's conclusion

that the comparisons of negligence made by the jury were against the great weight of the evidence.

In setting forth its analysis of the evidence, which prompted it to conclude that the 70-30 percent comparison was against the great weight of the evidence, the court stressed in its memorandum decision, as the fact of paramount importance, that Green could have used at least 16½ feet of usable roadway between the Sell and Blackwell cars, even if three feet of the Sell automobile were on the highway. This overlooks entirely the fact that it was the negligence of the plaintiff boys, in pushing the unlighted Sell car onto the highway, which created the dangerous situation that precipitated the accident.

Green was not negligent in attempting to pass the Blackwell car at a time when the Sell automobile was not yet visible to Green. Green's speed at the time of passing was 40 miles per hour. At this speed his car was traveling 59 feet per second, and a total distance of 149 feet would have been required within which to stop. Wisconsin's Manual for Motorists (1959 ed.), p. 36. Inasmuch as Green did not see the unlighted Sell car until he was 100 feet from it, he could not have brought his car to a stop in that distance. At this point he believed himself confronted with an emergency and, while trying to stop, lost control of his car to the extent that it struck the Sell automobile. The jury assessed 30 percent of the negligence to Green. One possible explanation is that the jury may have determined Green was not entitled to the emergency rule because he was then traveling at such a speed that he could not stop within the distance he could see ahead. A second possibility is that the jury may have concluded that while his speed was not negligent he was negligent with respect to lookout in not seeing the Sell car sooner. A third alternative is that the jury felt that Green was negligent in failing to see at a distance of 100 feet that he had plenty of room to pass between the

Sell and Blackwell cars, and to manage his own car so as to pass between them.

Nevertheless, whatever the jury's basis for apportioning 30 percent of the negligence to Green, there was every reason for the jury to conclude that plaintiff boys' negligence in pushing the unlighted Sell car onto the highway was greater than Green's, and to apportion the negligence accordingly. Thus it was unreasonable for the trial court to conclude that this apportionment was opposed to the great weight of the evidence. Therefore, I concur in the result reached in Mr. Justice DIETERICH's opinion.