**Gene R. OTTERNESS, et al., Appellants,**

v.

**Daniel Joseph HORSLEY, et al., Respondents.**

**No. 47254.**

Supreme Court of Minnesota.

Feb. 10, 1978.

Edward F. Rooney, Minneapolis, for appellants.

---

Kelley Torrison & O'Neill and Timothy J. Dwyer, St. Paul, for respondents.

Heard before ROGOSHESKE, KELLY, and YETKA, JJ., and considered and decided by the court en banc.

KELLY, Justice.

This is an appeal from a judgment of the district court dismissing plaintiffs' cause of action against each defendant pursuant to a special jury verdict in defendants' favor. We affirm.

This action arose out of a collision between an automobile driven by Daniel Horsley, hereafter defendant, and a motorcycle driven by Gene Otterness, hereafter plaintiff, that occurred at the intersection of Yankee Doodle Road and Lexington Avenue in Eagan Township on July 14, 1971. Yankee Doodle Road runs generally east and west and has one lane for traffic in each direction. Lexington Avenue runs north and south and, at the time of the accident, also had one lane for traffic in each direction. Traffic on Yankee Doodle Road was controlled by stop signs on each side of its intersection with Lexington. Lexington was a through highway. South of the intersection, Lexington Avenue rises to the crest of a hill approximately ¼ of a mile away. The land surrounding the intersection was generally undeveloped, although there was a house at the northeast corner of the intersection. At the time of the accident, the view from Yankee Doodle Road south on Lexington was not obstructed.

At approximately 6:30 p. m. on the day of the accident, defendant was proceeding east on Yankee Doodle Road. He approached the intersection and initially stopped west of the stop sign which was about 34 feet west of the intersection. After some discussion among the automobile's passengers about which way to proceed, defendant drove to a point about 14 feet west of the intersection and stopped again. Defendant and two of his four passengers looked both ways on Lexington and saw no oncoming traffic. Defendant, looking straight ahead, then started across the intersection at ap-

proximately 5 miles per hour. When he was part way through the intersection, one of the passengers shouted a warning. Defendant turned to his right and, for the first time, saw plaintiff approaching from the south. Defendant attempted to accelerate, but was unable to avoid the collision. The motorcycle struck the vehicle's right rear door. Plaintiff was thrown to the ground and suffered a broken wrist, broken femur, and lacerations. From where he had last stopped, defendant had driven at least 35 feet when the collision occurred.

Plaintiff testified that he was driving north on Lexington at 45 to 50 miles an hour. As he drove over the crest of the hill south of the intersection, he saw defendant's vehicle approach the stop sign and stop. When defendant did not proceed immediately, he assumed defendant was waiting for him to cross the intersection and continued toward the intersection without reducing speed. When he was 20 to 30 feet from the intersection, defendant pulled out from the stop sign in front of him. He did not have time to take evasive action and could not avoid the collision.

At trial, defendants introduced evidence that within a few hundred feet south of the intersection a driveway led from the west side of Lexington to nearby fields and that plaintiff's motorcycle was not a "street bike," but one that could be operated in brushy areas where a street bike would be damaged. No other evidence suggested that plaintiff did not, in fact, drive on Lexington Avenue from the hill south of the intersection.

The parties stipulated that Roger and Lucille Otterness had incurred $4,574.25 medical expenses as a result of their son's accident and that there was $400 damage to the motorcycle.

The case was submitted to the jury, which returned a special verdict finding that plaintiffs suffered no damages, defendant was not negligent, plaintiff was 100-percent negligent, and that plaintiff's negligence was a direct cause of the accident. Plaintiffs' motion for a judgment

notwithstanding the verdict and a new trial on the issue of damages, or, in the alternative, a new trial on all issues was denied. Plaintiffs appeal from the judgment of dismissal entered pursuant to the verdict.

Plaintiffs contend that the jury's verdict on liability is contrary to the great weight of the evidence and that this fact, coupléd with the finding of no damages, indicates that the verdict was so tainted by passion and prejudice as to entitle plaintiffs to a new trial.

■ This court established the rule governing the granting of new trials where the jury has found damages that are clearly inadequate in *Wefel v. Norman*, 296 Minn. 506, 207 N.W.2d 340 (1973). We stated:

"There was ample evidence to support the verdict on liability. On the question of damages, we adopt the position of the Wisconsin Supreme Court, which held in *Sell v. Milwaukee Auto. Ins. Co.*, 17 Wis.2d 510, 519, 117 N.W.2d 719, 724 (1962):

" 'The rule is that where a jury has answered other questions so as to determine that there is no liability on the part of the defendant, which finding is supported by credible evidence, the denial of damages or granting of inadequate damages to the plaintiff does not necessarily show prejudice or render the verdict perverse.' " 296 Minn. 507, 207 N.W.2d 341.

Accord, *Goblirsch v. Western Land Roller Co.*, Minn., 246 N.W.2d 687 (1976); *Kirby v. Frank*, 301 Minn. 488, 221 N.W.2d 712 (1974). Thus, if the verdict on liability is supported by credible evidence, the denial of damages will not entitle plaintiffs to a new trial, and we must affirm.

■ Where a party seeks a new trial on the ground that the verdict is not justified by the evidence, we will substitute our judgment for that of the jury "only if there is no evidence reasonably tending to sustain the verdict or if it is manifestly and palpably against the weight of the evidence." *Templin v. Crestliner, Inc.*, 263 Minn. 149, 151, 116 N.W.2d 178, 180 (1962). We believe that this is not such a case.

■ While plaintiff testified that he was 20 or 30 feet from the intersection when defendant started to cross, defendant testified that he drove at least 35 feet from his last stop before the collision. If plaintiff was going 45 to 50 miles per hour and defendant no more than 5 miles per hour, plaintiff would have traveled over 300 feet in the time it took defendant to drive 35 feet. Thus, if each party accurately estimated his speed and distance, the accident could not have occurred. It is the province of the jury to resolve such conflicting testimony, *Kolatz v. Kelly*, 244 Minn. 163, 69 N.W.2d 649 (1955), and we cannot say that a determination that plaintiff was over 300 feet from the intersection would be unreasonable.

In *Kolatz v. Kelly, supra*, we set forth the duties of motorists approaching through-highway intersections as follows:

" * * * Stop signs at through highways or at street intersections do not require operators of cars to enter the arterial street at their peril but only to exercise ordinary and reasonable care with regard to traffic on the through street before entering thereon. They must, however, make such reasonable observations as the conditions surrounding the intersection will permit before they proceed across. *Bohnen v. Gorr*, 234 Minn. 71, 47 N.W.2d 459. While the operators of cars upon such streets or highways have the right of way by reason of the through street or highway, such operators are nevertheless bound to operate them with reasonable care as to the traffic entering from the side streets. Under our existing statutes, after a car has once stopped for a through street in response to the stop sign and the motorist has exercised the ordinary and reasonable care required under § 169.20, subd. 3, before entering commensurate with the care required under the circumstances, the usual rules in regard to right of way and speed prevail. *Bell v. Pickett*, 178 Minn. 540, 227 N.W. 854." 244 Minn. 170, 69 N.W.2d 655.

In this case, the jury could conclude that a motorcycle traveling 50 miles per hour is not clearly visible at a distance of more than 300 feet and that defendant was not negligent in failing to see plaintiff approaching. The jury might further conclude that, at such a distance, plaintiff's vehicle did not constitute an "immediate hazard" within the meaning of the state right-of-way statute, Minn.St. 169.20. Subdivision 3 of this provision reads in part:

> "The driver of a vehicle shall stop as required by this chapter at the entrance to a through highway and shall yield the right of way to other vehicles which have entered the intersection from the through highway or which are approaching so closely on the through highway as to constitute an immediate hazard, but the driver having so yielded may proceed, and the drivers of all other vehicles approaching the intersection on the through highway shall yield the right of way to the vehicles so proceeding into or across the through highway."

On the same basis, the jury could conclude that plaintiff's failure to yield the right-of-way or to keep a proper lookout constituted negligence and was the direct cause of the accident.

Were defendants' "driveway theory" the only possible ground for the verdict, we might be inclined to reverse. See, *LaFavor v. American National Insurance Co.*, 279 Minn. 5, 155 N.W.2d 286 (1967); *Messenger v. St. Paul City Ry. Co.*, 77 Minn. 34, 79 N.W. 583 (1899). However, as we stated in *Flatt v. Hirmke*, 178 Minn. 621, 227 N.W. 853, 854 (1929),

> "The evidence was conflicting. That for defendant, if believed by the jury, and it was, is sufficient to support the verdict. It was not devitalized by inherent improbability or self-contradiction. It was not opposed by established physical facts. A verdict based upon such evidence will not be disturbed."

Affirmed.

TODD, Justice (dissenting).

I must respectfully dissent from the result reached by the majority because I am unable, as a practical matter, to reconcile the present case with the decision of this court in *Riley v. Lake*, 295 Minn. 43, 203 N.W.2d 331 (1972).

The facts of the *Riley* case are strikingly similar. The plaintiff was traveling north toward an uncontrolled intersection. Defendant was driving west on the intersecting street. According to her testimony, plaintiff looked to her right as she approached the intersection, had an unobstructed view for a distance roughly equal to a city block, and saw nothing. She therefore did not brake for the intersection, although her foot was off the accelerator. In any event, when plaintiff's car was nearly through the intersection, it was struck on the rear, right-hand side by defendant's car. Defendant likewise testified that he had not seen plaintiff's car and "just wasn't paying any attention." 295 Minn. 48, 203 N.W.2d 335. The jury compared the parties' negligence and found the defendant 100-percent negligent.

On appeal, this court overturned the jury's findings and held plaintiff to have been negligent as a matter of law. The reasoning underlying the *Riley* decision is of particular importance here. Based on the physical fact that a collision had occurred, the court reached the rather obvious conclusion that the two vehicles must have entered the intersection at almost exactly the same moment. The statute governing right-of-way in uncontrolled intersections, Minn.St. 169.20, subd. 1, required that when two vehicles approach an uncontrolled intersection at approximately the same time, the driver on the left must yield the right-of-way to the driver on the right.[1] The court reasoned that since the subject vehicles must have entered the intersection at approximately the same time, and since plaintiff's vehicle was on the left, the plaintiff should have yielded the right-of-way to defendant. The court concluded (295 Minn. 53, 203 N.W.2d 338):

1. This provision remains in effect at the present time.

"Under Minn.St. 169.96, failure to yield the right-of-way is prima facie evidence of negligence. *Where there is no evidence to excuse a violation of a right-of-way statute, the court should hold the violator negligent as a matter of law.*" (Italics supplied.)

The only material fact which differentiates the present case from *Riley v. Lake, supra,* is the type of intersection in which the collision occurred. In the *Riley* case, the intersection was uncontrolled; here, entry into the intersection from the east and west was controlled by stop signs. However, the difference in the nature of the intersections involved does not in practice justify the opposing right-of-way/negligence rules the court has established for the two situations.

To be sure, the right-of-way question in the instant case is controlled by a different statutory provision. Minn.St. 169.20, subd. 3, states in part:

"The driver of a vehicle shall stop as required by this chapter at the entrance to a through highway and shall yield the right of way to other vehicles which have entered the intersection from the through highway or which are approaching so closely on the through highway as to constitute an immediate hazard, but the driver having so yielded may proceed, and the drivers of all other vehicles approaching the intersection on the through highway shall yield the right of way to the vehicles so proceeding into or across the through highway."

The majority opinion correctly notes that this provision has been construed to require only that a driver exercise reasonable care in looking both directions before proceeding from a stop sign into an intersection. A motorist who has complied with this requirement gains the right-of-way while moving across the intersecting highway.

I cannot disagree with this general construction of § 169.20, subd. 3, but its application in this case has produced a result which is both unnecessary and counterintuitive. The majority reasons as follows: The jury could have concluded that while he was stopped at the intersection, defendant, in the exercise of due care, failed to see any oncoming traffic which he reasonably perceived as an "immediate hazard." Having made such an observation, the right-of-way shifted from any oncoming vehicles to defendant as he entered the intersection. The plaintiff motorcyclist was therefore under a duty to yield the right-of-way and his failure to do so constituted prima facie negligence.

While this reasoning is certainly internally coherent, it overlooks the simple truth that the motorcycle was in fact an "immediate hazard" when defendant started into the intersection. The fact that an accident occurred is conclusive proof that the motorcycle *must have been* so close to the intersection as to constitute an "immediate hazard." The majority opinion is thus supportable only if one finds agreeable the proposition that a driver who looks and fails to see another approaching vehicle with which he ultimately collides can fairly be considered not negligent. I find any such proposition unacceptable. Absent obstructions to a driver's view—and there were none in this case—the failure to see a vehicle which is close enough to collide with can be characterized only as negligence,[2] unless we are willing to countenance dangerously low standards of driving technique.

To bring the result in this case into accord with both the operative facts of the accident and our decision in *Riley v. Lake, supra,* I would allow the fact of the collision to support a mandatory inference that the two vehicles were inside the "danger zone" with respect to one another.[3] Under such

2. At very least, a driver who fails to see what is obviously present cannot be zero-percent negligent.

3. Requiring this inference as a matter of law would, of course, necessitate the abandonment

of certain of this court's language in *Peterson v. Rodekuhr,* 274 Minn. 204, 209, 143 N.W.2d 226, 230 (1966), where it was stated: "Plaintiff places some reliance upon the statement appearing in some of our cases to the effect that

circumstances, I would hold that defendant could not, as a matter of law, have exercised reasonable care before proceeding into the intersection. That being so, defendant could not gain the right-of-way under § 169.20, subd. 3. Having entered the intersection without the right-of-way, defendant would be held prima facie negligent. In the absence of any excuse,[4] defendant would be adjudged negligent as a matter of law.

This analysis, I submit, would be functionally identical to that which we employed in *Riley v. Lake, supra,* and would do no violence to the right-of-way mechanism contained in § 169.20, subd. 3. Once defendant's negligence was established, the jury would be free to weigh any of plaintiff's contributory negligence[5] in the comparative negligence balance. The results under the rule I have outlined seem much more likely to jibe with our intuitive sense of fault in intersection collisions.

Accordingly, I would reverse and remand this case with the instruction that defendant Horsley be found negligent as a matter of law, leaving to the jury the calculation of the parties' comparative negligence.

SCOTT, Justice (dissenting).

I join in the dissent of Mr. Justice Todd.

YETKA, Justice (dissenting).

I join with the dissent of Mr. Justice Todd.

OTIS, J., took no part in the consideration or decision of this case.

---

the fact '[t]hat plaintiff's automobile was so close as to constitute an immediate hazard is established by the event of the accident.' It is clear from a reading of those cases that the statement does not mean that the event of the accident establishes the immediacy of the hazard as a matter of law."

4. For example, evidence of obstructions to view could under proper circumstances constitute a legitimate excuse.

5. Evidence of plaintiff's contributory negligence could include such things as excessive speed or failure to maintain a proper lookout.