Clifford D. FLEAHMAN, Appellant,

v.

Albert L. LEHMAN, Gary D. Fleahman, Respondents,

Monticello Ford, Inc., Defendant.

No. C2–85–2223.

Court of Appeals of Minnesota.

June 10, 1986.

Review Denied Aug. 20, 1986.

Janet Aylward, Roy Schwappach, Schermer, Schwappach, Borkon, Ramstead & Mariani, Ltd., Minneapolis, for Clifford D. Fleahman.

John W. Hanson, Dahle & Hanson, Brooklyn Center, for Albert L. Lehman.

Kay Nord Hunt, Daniel J. Buivid, Jr., Lommen, Nelson, Cole & Stageberg, P.A., Minneapolis, for Gary D. Fleahman.

Heard, considered and decided by SEDG-WICK, P.J., and PARKER and FORS-BERG, JJ.

## OPINION

PARKER, Judge.

This appeal is from an order denying appellant Clifford Fleahman's motion for a new trial after an adverse special verdict in an action for damages arising out of an automobile accident. Appellant contends the trial court erred in instructing the jury on the emergency rule and that the jury verdict awarding him no damages was perverse because the evidence conclusively established that he suffered permanent injuries as a result of the accident. We disagree and affirm.

## FACTS

At about 5:30 p.m. on December 7, 1980, appellant was riding in a car driven by his son, respondent Gary Fleahman. They were proceeding east on I–694 in Minneapolis, Minnesota. It was very dark and had been raining heavily. The temperature was near freezing. Traffic had slowed to about 35 to 40 m.p.h. due to poor visibility. Although most of the other traffic was traveling in the right lane, respondent had pulled out into the left lane and had been proceeding in that lane for some time.

Albert Lehman was also traveling east on I–694, some distance ahead of the Fleahmans. Lehman was in the right lane along with the other traffic when he lost control of his vehicle. He slid and spun around, coming to rest just east of the Dupont Avenue overpass. His car was positioned diagonally across the freeway, partly on the left-hand shoulder and partly in the left lane.

Less than a minute later, respondent saw Lehman's car about 200 feet ahead of him. Respondent testified that he could not swerve around the car because there was no break in the right lane traffic and because he believed there was not enough room in the left lane for him to squeeze through on either side of the car. Although there was no overhead lighting and the median area behind Lehman's car was dark, respondent remembered that trucks had been hauling out of the median area at about that point. He turned his car sharply to the left, hoping to drive through the opening in the median. Because of the icy pavement, respondent's car slid and collided with Lehman's vehicle.

On impact appellant was thrown up into the roof of the car even though he was wearing his seat belt. He bumped his head and testified that it felt like his head and neck had been pushed down between his

shoulder blades. His dentures and glasses were broken. The next day he visited a chiropractor. Although never hospitalized for his injuries, he claims to experience severe pain in his neck and back and constant headaches. He continues to receive conservative treatment. He testified that he had to quit work and can no longer participate in his favorite sports, assist with the housework, or perform other tasks.

Immediately before trial, appellant and Lehman settled and entered into a Pierringer release. At the close of the evidence the jury found, in response to special verdict questions, that neither Lehman nor respondent had been negligent in the operation of their vehicles, that appellant did not "sustain a permanent injury as a result of the accident," and that appellant was entitled to no damages.

## ISSUES

1. Did the trial court commit reversible error by giving an instruction on the emergency rule?

2. Was the jury's finding of no permanent injury and its assessment of no damages so perverse as to require a new trial?

## DISCUSSION

### I

Over appellant's objection, the trial court charged the jury as follows on the emergency rule:

A person confronted with an emergency through no negligence of his own who, in an attempt to avoid the danger, does not choose the best or safest way, is not negligent because of such choice unless the choice was so hazardous that a reasonable person would not have made it under like circumstances.

Such an instruction "should always be given where it is consistent with the theory of one of the parties to the action and where the evidence submitted by such party would sustain a finding that he had been confronted with a sudden peril or emergency and acted under its stress." *Gran v.*

*Dasovic,* 275 Minn. 415, 419, 147 N.W.2d 576, 579 (1966).

The party seeking to invoke the emergency doctrine must show, among other things, that his own negligence did not create or contribute to the perilous situation. *Daugherty v. May Brothers Company,* 265 Minn. 310, 318, 121 N.W.2d 594, 599–600 (1963) (quoting Annot., 80 A.L. R.2d 5, 15–17 (1961) (footnotes omitted)). Appellant contends that respondent's conduct prior to encountering the Lehman vehicle contributed to the accident. He argues the evidence establishes respondent's negligence because his speed was excessive under the circumstances, because he chose to travel in the left lane of traffic when most other cars were traveling more cautiously in the right lane, and because he was on notice of the weather conditions and should have anticipated the icy pavement.

The testimony of the parties would allow the jury to have concluded that respondent was proceeding at about the same speed as the traffic in the right lane immediately before the collision. It is agreed that the traffic in the right lane was traveling between 35 and 40 m.p.h. According to both respondent's and appellant's testimony, respondent was going between 30 and 45 m.p.h. immediately before the collision. Respondent claimed he was traveling at the same speed as the cars in the right lane. Lehman confirmed this testimony, stating that it appeared the headlights coming toward him were proceeding at the same speed as the traffic in the right hand lane. From this, it could be concluded that respondent's speed was not excessive.

Similarly, the jury could have decided that respondent's move into the left lane was not necessarily negligent. When asked why he changed lanes, he answered, "It's my experience to use the left lane" and "I have been known to drive in the left lane." He testified that he was in no particular hurry to get to the bowling alley where he and his father intended to practice for their weekly leagues. Appellant admitted he had no problem with his son's

driving before the accident and that he did not tell him to slow down or that he was driving recklessly or carelessly.

Finally, there is evidence from which the jury could have found that respondent was confronted with sudden, unanticipated icy road conditions. Both respondent and appellant testified that respondent did not have any trouble controlling his car before the accident. Lehman also testified that he had not had any trouble before encountering that area of the freeway. Given that the icy pavement was not a prevalent or general condition but merely localized to that part of the freeway, the jury could have decided that respondent could not have anticipated the condition of the pavement and that he acted reasonably under the circumstances.

The trial court's instruction on the emergency rule in this case was proper. The evidence does not establish that respondent was negligent as a matter of law, nor does it unquestionably show that respondent's own negligence contributed to the emergency. *See, e.g., Lee v. Zaske,* 213 Minn. 244, 248–49, 6 N.W.2d 793, 795–96 (1942) (trial court erred in instructing on the emergency rule where "[i]t seems obvious to us that the defendant * * * brought on the emergency by driving * * * at the speed he did with defective brakes"); *Nelson v. Henning,* 354 N.W.2d 35, 41 (Minn. Ct.App.1984) (emergency rule instruction improper where evidence shows defendant "created its own situation of peril by knowingly failing to equip its vehicle with an effective emergency brake" and was therefore negligent as a matter of law). Because respondent's theory is consistent with the evidence, the trial court properly instructed the jury on the emergency rule and left the question of negligence to the jury. *See Larson v. Anderson, Taunton & Walsh, Inc.,* 379 N.W.2d 615, 622 (Minn. Ct.App.1985) (emergency rule instruction does not require a trial court "to determine, prior to submission of the case to the jury, that the [defendant] was not negligent. Determination of negligence was [properly] left to the jury").

## II

■ Appellant contends the trial court erred in denying his motion for a new trial because the jury's failure to award damages was perverse and not supported by the evidence. However, "where a jury has answered other questions so as to determine that there is no liability on the part of the defendant, which finding is supported by credible evidence, the denial of damages * * * to the plaintiff does not necessarily show prejudice or render the verdict perverse." *Wefel v. Norman,* 296 Minn. 506, 508, 207 N.W.2d 340, 341 (1973) (quoting *Sell v. Milwaukee Automobile Insurance Co.,* 17 Wis.2d 510, 519, 117 N.W.2d 719, 724 (1962)). On appeal we will substitute our judgment for that of the jury "only if there is no evidence reasonably tending to sustain the verdict or if it is manifestly and palpably against the weight of the evidence." *Otterness v. Horsley,* 263 N.W.2d 403, 405 (Minn.1978) (quoting *Templin v. Crestliner, Inc.,* 263 Minn. 149, 151, 116 N.W.2d 178, 180 (1962)).

■ Even if liability had been established, the jury's finding that appellant did not sustain a permanent injury as a result of the December 1980 accident is reasonably supported by the evidence. Appellant insists the jury improperly based its verdict on the testimony of one adverse witness, Dr. Robert Jeub, who testified (by deposition) that appellant did not incur any permanent injury as a result of the accident. Appellant contends the jury ignored not only appellant's own testimony regarding the permanency of his injuries, but also the opinions of two other physicians, Dr. David Boxall and Dr. Ivan Brodsky, appellant's treating physician.

The jury was entirely free to discount appellant's own testimony, given evidence that he may have quit working not only because of his pain, but also because he could collect social security benefits by that time. Expert testimony is meant to be advisory to the jury; it rarely compels a result. Given the conflicting evidence in this case, the jury could properly adopt the

conclusions reached by Dr. Jeub and find appellant's injuries not permanent.

The jury could also have found that appellant's present condition was caused not by the 1980 accident but by prior accidents and pre-existing medical problems. Appellant was involved in a car accident in 1979 and had injured his left heel in June 1980; these prior accidents may have contributed to appellant's present injuries. Appellant had pre-existing medical problems, including ulcers and degenerative disease of the spine, or osteoarthritis. Doctors Brodsky and Boxall testified that appellant's osteoarthritis predisposed him to injury or that it was exacerbated or aggravated by the accident. Both nevertheless agreed that his present injuries were caused by the 1980 accident. Dr. Jeub testified that appellant's neck pain was due to advanced hypertrophic osteoarthritis and that this pain would be present regardless of the accident. Given these conflicting opinions, the jury's finding that appellant did not suffer any permanent injuries as a result of the accident must be upheld as reasonably supported by the evidence.

### DECISION

The trial court properly instructed the jury on the emergency rule. The jury's failure to award damages is not grounds for a new trial.

Affirmed.