**Jeffrey C. RUSSELL, et al., Appellants,**

**NWA Health Care Plus, Intervenor,**

v.

**Randall K. JOHNSON, M.D., et al., Respondents.**

No. C7–99–1398.

Court of Appeals of Minnesota.

April 11, 2000.

---

Joseph T. O'Neill, Michael D. O'Neill, Elizabeth I. Goodpaster, O'Neill, Grills & O'Neill, P.L.L.P., and Patrick H. O'Neill, Jr., Patrick H. O'Neill, Jr., LTD., St. Paul (for appellants).

Ryan J. Burt, Kevin D. Hoffman, Halleland, Lewis, Nilan, Sipkins & Johnson, P.A., Minneapolis (for intervenor).

William M. Hart, Melissa Dosick Riethof, Meagher & Geer, P.L.L.P., Minneapolis (for respondents).

Considered and decided by RANDALL, Presiding Judge, AMUNDSON, Judge, and WILLIS, Judge.

## OPINION

RANDALL, Judge.

Appellant Jeffrey C. Russell suffered cardiac arrest and resulting brain damage when he collapsed while coaching youth hockey. Appellants sued Russell's physician, Dr. Randall K. Johnson, for negligence and negligent nondisclosure based on the physician's failure to advise Russell to limit his physical activities or to warn of the risk of sudden death from strenuous exercise. The jury returned a verdict in favor of the physician and the clinic, and the district court denied appellants' motion for a new trial. Appellants challenge the district court's rejection of their proposed jury instruction and special-verdict interrogatories on negligent nondisclosure. They also argue that the district court erred in denying a new trial on the ground there was insufficient evidence to support the verdict.

## FACTS

In June of 1995, Russell's primary physician was disturbed by the results of an electrocardiogram performed on the 33 year old and referred Russell to cardiologist Dr. Randall Johnson. Dr. Johnson was provided with Russell's 1995 electrocardiogram report and an abnormal echocardiogram report from 1982. Dr. Johnson saw Russell several times in August 1995. First he took Russell's medical history; then he ordered an echocardiogram. Relying on the results of the most recent echocardiogram, Dr. Johnson diagnosed Russell with hypertrophic cardiomyopathy ("HCM").

During a follow-up visit with Russell on August 30, 1995, Dr. Johnson told Russell about his diagnosis and informed him that the chance of serious complications was small because Russell had been stable for 13 years and there had been no significant change in his cardiac condition. Because Russell was asymptomatic, Dr. Johnson did not affirmatively recommend that Russell modify his lifestyle or refrain from strenuous athletic activities. Dr. Johnson did not tell Russell directly that strenuous exercise might increase his risk of sudden death. On December 17, 1995, while coaching youth hockey, Russell experienced cardiac arrest, sometimes referred to as sudden death. He was resuscitated, but was in a coma for several weeks and suffered severe brain injury.

Russell and his wife sued Dr. Johnson for negligent care and treatment and negligent nondisclosure. The district court refused to give jury instructions and special-verdict questions regarding negligent nondisclosure, finding that in this case the claim for nondisclosure was not a separate theory from negligent care and treatment. The jury returned a verdict for the respondent on the issue of negligence. The jury also found no damages, despite the parties' stipulation to the amount of Russell's medical expenses. Appellants moved for a new trial, arguing insufficient evidence supported the verdict and error on the

part of the district court in refusing to present the jury with separate instructions and special-verdict questions on negligent nondisclosure. The district court denied the motion for a new trial. This appeal followed.

## ISSUES

1. Did the district court err in refusing proposed jury instructions and special verdict questions about negligent nondisclosure?

2. Did the district court abuse its discretion in refusing to grant a new trial for insufficient evidence?

## ANALYSIS

### I.

■ District courts are allowed considerable latitude in determining jury instructions. *State Farm Fire & Cas. Co. v. Short*, 459 N.W.2d 111, 113 (Minn.1990); *Alholm v. Wilt*, 394 N.W.2d 488, 490 (Minn.1986). District courts also have broad discretion in drafting special-verdict questions. *Dang v. St. Paul Ramsey Med. Ctr.*, 490 N.W.2d 653, 658 (Minn.App.1992), *review denied* (Minn. Dec. 15, 1992). Where jury instructions fairly and correctly state the applicable law, this court will not reverse the denial of a new trial. *Alevizos v. Metropolitan Airports Comm'n*, 452 N.W.2d 492, 501 (Minn.App. 1990), *review denied* (Minn. May 11, 1990).

■ The district court here refused to give a requested jury instruction on negligent nondisclosure, opting to rely on a more general negligence and malpractice instruction. Similarly, the district court denied appellants' request to include specific questions about negligent nondisclosure on the special-verdict form, instead asking a general question about negligence and the standard of care in treatment.

■ To prevail under a negligent nondisclosure theory, a plaintiff must show: "(1) a duty on the part of the physician to know of a risk or alternative treat-ment plan; (2) a duty to disclose the risk or alternative program, which may be established by a showing that a reasonable person in what the physician knows or should have known to be the plaintiff's position would likely attach significance to that risk or alternative in deciding whether to consent to treatment; (3) breach of that duty; (4) causation (the undisclosed risk must materialize in harm); and (5) damages."

*Reinhardt v. Colton*, 337 N.W.2d 88, 96 (Minn.1983) (quoting *Plutshack v. University of Minn. Hosps.*, 316 N.W.2d 1, 9 (Minn.1982)). In *Reinhardt*, the supreme court distinguished the role of expert witnesses in negligent nondisclosure cases from the role of experts in cases involving negligent treatment because their prima facie cases consist of different elements. *Id.*

In *Pratt by Pratt v. University of Minn. Affiliate Hosps. & Clinics*, 414 N.W.2d 399, 402 (Minn.1987), the Minnesota Supreme Court limited negligent nondisclosure, holding "diagnosis, without more, does not give rise to a duty to disclose risks concerning conditions not diagnosed." The supreme court noted that if the diagnosis was negligently made, then the proper claim would be for malpractice. *Id.*

In *Madsen v. Park Nicollet Med. Ctr.*, 431 N.W.2d 855, 856 (Minn.1988), the plaintiff argued the doctor's failure to insist on hospitalization was both negligent treatment and negligent nondisclosure of the risk of not being hospitalized. The district court did not give an instruction on negligent nondisclosure, and the jury found for the defendant. *Id.* The Minnesota Supreme Court determined that

[t]he informed consent/nondisclosure doctrine does not involve negligence in the administration of treatment, in failure to treat, or in failure to properly diagnose. Physician liability is imposed by the rule only for failure to secure the patient's informed consent to treatment which results in harm which the patient

would have avoided by declining treatment or by choosing alternative treatment.

*Id.* at 861. The supreme court also noted:

Broad latitude at trial was given to all parties to present evidence and to argue all theories of liability in final argument. By its verdict, the jury rejected all of the respondent's theories of negligent treatment. Respondent's consent/negligent nondisclosure claim is no different; the negligence is bottomed on [the doctor's] failure to hospitalize.

*Id.*

■ The district court in the present case similarly allowed appellants broad latitudes in presenting their theories and were rooted in Dr. Johnson's failure to recommend Russell not participate in strenuous exercise. The district court refused to give a separate instruction on negligent nondisclosure because it determined appellants were actually arguing negligent care and treatment. Negligent nondisclosure and negligent care and treatment can overlap at times, but they are different causes of action. Appellants' attempt to create a difference that would allow both theories to be presented to the jury was unsuccessful. In essence, appellants have one case of medical malpractice based on allegations of negligent treatment. It was tried fully and fairly to the jury. Appellants cannot now claim they had two separate cases. We cannot conclude that the district court erred in finding appellants' negligence claims were all based on allegations of negligent care and treatment. The district court did not err in refusing to give separate jury instructions and special-verdict questions on the theory of negligent nondisclosure.

## II.

■ Appellants argue the district court erred in refusing to grant them a new trial because respondent presented insufficient evidence to support the verdict. The district court has discretion to decide whether to grant a new trial, and we will not disturb the decision absent a clear abuse of that discretion. *Halla Nursery, Inc. v. Baumann–Furrie & Co.*, 454 N.W.2d 905, 910 (Minn.1990). This court will affirm a jury verdict unless no reasonable person could come to the same conclusion as the jury. *Hauenstein v. Loctite Corp.*, 347 N.W.2d 272, 275 (Minn.1984). And a jury's answer to a special-verdict question will not be set aside unless it is "perverse and palpably contrary to the evidence" and "no reasonable mind could find as did the jury." *Id.; Domtar, Inc. v. Niagara Fire Ins. Co.*, 563 N.W.2d 724, 734 (Minn.1997) (citation omitted). A jury's answers on a special-verdict form will be disturbed only if they cannot be reconciled on any theory. *Hughes v. Sinclair Mktg., Inc.*, 389 N.W.2d 194, 198 (Minn.1986) (holding jury verdict will be sustained on any reasonable theory based on evidence); *Nihart v. Kruger*, 291 Minn. 273, 276, 190 N.W.2d 776, 778 (Minn.1971) (holding reviewing court need only examine record to determine whether jury's verdict is consistent on any theory).

Appellants cited five facts they claim are uncontroverted and constituted negligence on the part of Dr. Johnson and therefore precluded the jury from finding for respondent: (1) Dr. Johnson's failure to accurately measure Russell's echocardiogram; (2) Dr. Johnson's uncertainty in his diagnosis; (3) Dr. Johnson's failure to properly assess Russell's risks; (4) Dr. Johnson's failure to inform Russell of additional available treatments; and (5) Dr. Johnson's failure to refer Russell to an HCM specialist.

However, respondent demonstrated that facts presented to the jury challenged these assertions, and these facts, if believed, allow a jury to find Dr. Johnson was not negligent. First, the experts determined that despite Dr. Johnson's inaccurate echocardiogram measurement, his diagnosis of Russell's condition was accurate. Second, Dr. Johnson testified that he was certain of his diagnosis in Decem-

ber 1995, and Dr. Sherrid agreed that Dr. Johnson made a clear and accurate diagnosis at that time. Third, appellants' expert, Dr. McKenna, admitted that asymptomatic HCM patients, like Russell, are at low risk for sudden death, and Dr. Sherrid agreed that Russell was a low-risk HCM patient. Fourth, Dr. Sherrid testified that the additional treatments available for HCM are not effective. Fifth, Russell was at low risk for sudden death and Dr. Johnson did not depart from the generally acceptable standard of care. Viewed in the light most favorable to the verdict, sufficient evidence existed to support the jury verdict, and the district court did not err in denying a new trial.

▪ Appellants also argue they are entitled to a new trial because the jury's failure to award stipulated damages demonstrates prejudice and passion and renders the verdict perverse. We understand appellants' argument, but this issue has been addressed before. The Minnesota Supreme Court held

> "where a jury has answered other questions so as to determine that there is no liability on the part of the defendant, which finding is supported by credible evidence, the denial of damages or granting of inadequate damages to the plaintiff does not necessarily show prejudice or render the verdict perverse."

*Wefel v. Norman*, 296 Minn. 506, 508, 207 N.W.2d 340 341 (Minn.1973) (quoting *Sell v. Milwaukee Auto. Ins. Co.*, 17 Wis.2d 510, 117 N.W.2d 719, 724 (1962)); *see also Otterness v. Horsley*, 263 N.W.2d 403, 405 (Minn.1978) (holding if credible evidence supports no-liability verdict, jury's denial of damages does not require a new trial).

The jury answered the first question of the special-verdict form finding Dr. Johnson not negligent in the care and treatment he provided to Russell. The record shows this finding is supported by credible evidence. The jury's denial of stipulated damages does not necessarily show prejudice nor render the verdict perverse. The jury's first answer on the negligence ques-

tion (in favor of Dr. Johnson) effectively mooted the issue of damages. Thus, the jury's error, if any, in not awarding at least some damages does not mandate a new trial.

The district court did not err in refusing to grant appellants a new trial on this issue.

## DECISION

The district court did not err in refusing to present the jury with separate instructions and special-verdict questions on negligent nondisclosure or in denying a new trial.

**Affirmed.**