# HERBERT W. WOLLE AND ANOTHER v. MARVIN JORGENSON AND ANOTHER.

99 N. W. (2d) 57.

October 30, 1959—No. 37,686.

Seifert, Johnson & Hand and Leo J. Seifert, for appellants.

Erickson & Zierke, Chris L. Erickson, and Charles R. Zierke, for respondents.

THOMAS GALLAGHER, JUSTICE.

Plaintiffs recovered a verdict of $20,625 for injuries and damages resulting from an automobile collision at the intersection of Waverly Township Road and State Aid Road No. 14 in Martin County about 2 miles southwest of Truman. State Aid Road No. 14 runs in a general northerly and southerly direction and is approximately 28 feet in width; Waverly Township Road runs in a general easterly and westerly direction and is approximately 18 feet in width. There is no stop sign at the intersection, and a cornfield to the immediate southeast partially obstructs the views of drivers approaching it from the south and east.

The accident occurred on August 30, 1955, when an automobile driven northerly on State Aid Road No. 14 by Mrs. Hulda Jorgenson collided with an automobile driven westerly on Waverly Township Road by Mrs. Ruth Helen Wolle. Evidence was submitted that the Jorgenson car left skid marks for a distance of 76 feet to the south of the point of impact and that the Wolle car left skid marks for a distance of 9 feet to the east of such point.

Because of resulting amnesia, Mrs. Wolle had no recollection as to any details of the occurrence. Mrs. Jorgenson testified that she had been traveling about 50 miles per hour and had reduced her speed for the intersection; that she had observed the Wolle car on Waverly Township Road to her right traveling toward the intersection at approximately 60 miles per hour and that it had not reduced speed prior to the collision; and that because of the cornfield she was able to see only the top of this car as it traveled westerly.

At the close of the testimony defendants requested the following instruction:

"You are instructed that the failure to drive at an appropriate reduced speed in approaching an intersection in compliance with 169.14, Subdivision 3, M. S. A., constitutes driving at an unlawful speed under 169.20, Subdivision 1, and if you find from the evidence in this case that the plaintiff Helen Wolle failed to drive at an appropriate reduced speed in approaching the intersection you may then find that such speed was unlawful and that the right-of-way was forfeited by reason thereof."

On the issue embodied therein the trial court read certain statutes and gave certain instructions to the jury as follows:

"When two vehicles enter an intersection at approximately the same time, the driver approaching from the left is required to yield the right-of-way to the one approaching from the right. [M. S. A. 169.20, subd. 1.]

\* \* \* \* \*

"\* \* \* an automobile approaching from the left is under the duty of yielding the right-of-way to the one approaching from the right when they approach the intersection under such circumstances that, if both continue at the speeds at which they are traveling, a collision is likely to occur.

" 'The driver of any vehicle traveling at an unlawful speed shall forfeit any right-of-way which he might otherwise have hereunder' under this rule of law I just gave you. [§ 169.20, subd. 1.]

\* \* \* \* \*

" 'Where no special hazards exist, the following speeds shall be lawful, \* \* \*.' [§ 169.14, subd. 2.] \* \* \* outside of any municipality, city or village 60 miles per hour is the limit of lawful speed.

" 'The driver of any vehicle shall, consistent with the requirements, drive at an appropriate reduced speed when approaching and crossing an intersection, and when special hazards exist with respect to pedestrians or other traffic by reason of weather or highway conditions.' [§ 169.14, subd. 3.]

\* \* \* \* \*

"But the right-of-way rule is not an unyielding one. The rule does not invariably give the driver on the right the unlimited privilege of crossing. It does not relieve him of the duty of exercising due care commensurate wth the conditions then existing as he approaches the intersection.

"The driver of a vehicle approaching an intersection from the left has the right to assume, until and unless he becomes aware to the contrary, that the driver to the right will exercise ordinary care.

"The driver of an automobile approaching and entering an intersection, where the view is obstructed, must exercise a degree of care commensurate with the extra hazards created by such obstruction."

At the close of the instructions, the following proceedings took place:

Court: "Do counsel have anything to call to the Court's attention?

\*     \*     \*     \*     \*

"Mr. Seifert: If the Court please, the Court instructed the jury, in effect, that any driver who drives at an unlawful speed forfeits his right-of-way which he had, and then the Court stated to the jury that sixty miles is a lawful speed or is the limit. We again call the Court's attention to the fact that we requested instruction number 7, which reads: 'You are instructed that the failure to drive at an appropriate reduced speed in approaching an intersection, in compliance with 169.14, Subdivision 3, M. S. A., constitutes driving at an unlawful speed under 169.20, Subdivision 1, and if you find from the evidence in this case that the plaintiff, Helen Wolle, failed to drive at an appropriate reduced speed in approaching the intersection, you may then find that such speed was unlawful and that the right-of-way was forfeited by reason thereof.' Now we will call it to your attention that you did not give instructions to the jury that unlawful speed or limited speed of sixty miles an hour is one thing, and unlawful speed by not reducing speed is another thing. It leaves the impression that if you go sixty miles an hour it is still lawful.

"The Court: (Further instructing jury) While I instructed you that sixty miles an hour outside of a municipality is a lawful speed, I want to point out to you that that is a lawful speed only where no special

hazards exist. I have said that before, but counsel wanted to be sure that you understood that and were not under the impression that you can go sixty miles an hour under all circumstances.

\* \* \* \* \*

"Is there anything else?

"Mr. Seifert: No."

On appeal it is defendants' contention that the court's refusal to give defendants' requested instruction constituted reversible error. Defendants also contend that the court erred in overruling objections to certain questions asked by plaintiffs' counsel. These will be referred to below.

■ In substance defendants argue that after reading § 169.20, subd. 1, to the jury the court should have stated that, if the jury found that Mrs. Wolle failed to drive at an appropriate reduced speed in approaching this intersection, it then might find that her speed was unlawful and that in consequence her right-of-way was forfeited, citing Storbakken v. Soderberg, 246 Minn. 434, 75 N. W. (2d) 496; Adelmann v. Elk River Lbr. Co. 242 Minn. 388, 65 N. W. (2d) 661; Norton v. Nelson, 236 Minn. 237, 53 N. W. (2d) 31, in support thereof, and directing attention to the fact that in Norton v. Nelson, *supra,* this court expressed the exact rule included in the requested instruction.

■ The general principles governing the court's obligations in instructing a jury are well established. The charge must be presented in clear and precise form so as to leave no likelihood for the drawing of erroneous inferences. Nubbe v. Hardy Continental Hotel System, 225 Minn. 496, 31 N. W. (2d) 332. If it appears to be lacking in clarity, counsel should direct the court's attention to this fact and to request that it be corrected at the time. 19 Dunnell, Dig. (3 ed.) § 9798. Where exception is taken to a particular statement in the charge and the court modifies it to meet the objection, and no further exception is taken, and there is no claim of error as to fundamental law, the modification must be considered as acceptable. Torkelson v. Minneapolis & St. L. R. Co. 117 Minn. 73, 134 N. W. 307. If the charge fairly lays down the law the failure to state some abstract legal propo-

sition or definition in the technical language of the law will not, in the absence of a special request, be regarded as prejudicial error, Kostuch v. St. Paul City Ry. Co. 78 Minn. 459, 81 N. W. 215; and this court has stated on a number of occasions that generally it is not advisable to read to a jury statements of law found in court decisions or textbooks. Piepho v. M. Sigbert-Awes Co. 152 Minn. 315, 188 N. W. 998; Cargill Grain Co. v. Cleveland-Cliffs Steamship Co. 182 Minn. 516, 235 N. W. 268; Thomsen v. Reibel, 212 Minn. 83, 2 N. W. (2d) 567.

■ In the instant case, it is our opinion that the charge as above set forth did fairly state the applicable law and that the statutes read were sufficiently explained so that the jury could have had no misconception of the principles which apply in intersection cases. It was not left in doubt that the Wolle car, although approaching from the right, might, by traveling at an unlawful rate of speed, have forfeited the right-of-way across the intersection.

First, the court read § 169.20, subd. 1, to the effect that a vehicle traveling at an unlawful rate of speed shall forfeit any right-of-way it might otherwise have. It followed this with the explanation that "the right-of-way rule is not an unyielding one" and that "It does not relieve [a driver] * * * of the duty of exercising due care commensurate with the conditions then existing as he approaches the intersection." Next the court read § 169.14, subd. 3, requiring appropriate reduced speed in approaching an intersection where hazards exist, and explained that thereunder "The driver of an automobile approaching and entering an intersection, where the view is obstructed, must exercise a degree of care commensurate with the extra hazards created by such obstruction."

At the close of the charge, when defendants' counsel expressed his conviction that the jury might conclude erroneously from the instruction that 60 miles per hour was a lawful speed at this intersection, the court specifically cautioned the jury that such a speed would be lawful only when "no special hazards exist"; and that it should not get the impression that a driver might travel "sixty miles an hour under all circumstances." That this clarification satisfied counsel for defendants

appears manifest from his failure to then request further instructions on this issue. In his argument prior to these instructions, he had ably and vigorously stressed the point that a speed of 60 miles per hour was not lawful at this intersection in view of the hazards that existed there; and that a driver might "drive through this particular intersection, from the east, at twenty miles an hour and * * * be guilty of negligence." In the situation thus presented, it seems there could be no reasonable doubt that the jurors understood that if special hazards existed at this intersection the duty to reduce speed as she approached it rested upon Mrs. Wolle and that if she had failed to do so her right-of-way was thus forfeited.

■ The cases cited by defendants do not compel a contrary conclusion. In Norton v. Nelson, *supra,* the statement that (236 Minn. 244, 53 N. W. [2d] 36) "failure to drive at an appropriate reduced speed in compliance with § 169.14, subd. 3, constitutes driving at an *unlawful* speed under § 169.20, subd. 1," was not made in approval or disapproval of instructions given but rather as a general summary of legal principles applicable to facts there involved. In Adelmann v. Elk River Lbr. Co. *supra,* the court erroneously refused to give the jury *any* instructions as to the duty of a driver to drive at an appropriate reduced speed in approaching an intersection where the jury might find that special hazards existed. Storbakken v. Soderberg, *supra,* did not involve any claim of error as to instructions, but determined that a speed of from 45 to 50 miles per hour approaching a blind intersection might be deemed unlawful so as to result in forfeiture of a right-of-way. Butler v. Engel, 243 Minn. 317, 68 N. W. (2d) 226, related to erroneous instructions as to lawful and unlawful rates of speed within a municipality. In Jablinske v. Eckstrom, 247 Minn. 140, 76 N. W. (2d) 654, cited by plaintiffs, we held that the court's failure to give a similar instruction did not constitute reversible error where the omission was unintentional and counsel had not directed the court's attention to it before the jury retired.

■ Defendants cite as error the court's failure to sustain objections to certain interrogatories submitted to plaintiffs on their direct examination. They related to Herbert W. Wolle's opinion as to his wife's

ability to drive an automobile, whether her driver's license had ever been revoked or restricted by the state, and whether Mrs. Wolle had been involved in any previous accident. As to the latter, it was first answered and thereafter withdrawn and the jury was then instructed to disregard both the question and answer. All of these questions were propounded by plaintiffs' counsel subsequent to a lengthy and vigorous cross-examination of Mrs. Wolle in which defendants' counsel properly sought to establish that because of Mrs. Wolle's prior mental difficulties her qualifications as a driver were subject to question. Thus, for example, he asked her such questions as:

"Q.   * * * you had a psychiatrist treat you again in the fall of 1954?

*   *   *   *   *

"Q.   You had a mental depression at that time?

*   *   *   *   *

"Q.   * * * Is there anything else that you can think of, that you can tell the jury, that you think brought on this mental depression in 1954?

*   *   *   *   *

"Q.   * * * During the fall of 1954 were you driving an automobile?

*   *   *   *   *

"Q.   And there for a while, in 1954, after you had the baby, the last one, and before you went to * * * the psychiatrist, you did not drive a car, did you?

*   *   *   *   *

"Q.   After you were in the St. Joseph Hospital and got out after a while, you did not drive a car for a month? * * *

*   *   *   *   *

"Q.   Now, when you have those nervous spells or depressions * * * you get confused, don't you?

*   *   *   *   *

"Q.   * * * when you get nervous, you tell this jury that you can think just as fast as when you are not nervous, is that right?

*   *   *   *   *

"Q. And you are telling us now that, after you had that mental breakdown in the fall of 1954, when you got back from Mankato you kept right on driving an automobile?"

It seems clear that unless plaintiffs' counsel sought to refute these suggestions and clarify Mrs. Wolle's status as a qualified driver some impression might be left with the jury that because of her mental condition she was not competent or authorized to drive at the time of the accident. In attempting to refute these suggestions, her counsel brought out that Mr. Wolle regarded her as a good driver and that she had been qualified to hold a driver's license which had never been revoked. Under all of the circumstances presented we would hesitate to say that the trial court committed material error in permitting such testimony to be received in evidence. See, Mahowald v. Beckrich, 212 Minn. 78, 2 N. W. (2d) 569. When the evidence was finally submitted in full, obviously the jury was aware of the fact that Mrs. Wolle had suffered mental disorders a year or so prior to the accident for which she had been hospitalized and placed under the care of psychiatrists; and also that at no time had she had her driver's license revoked. It is our opinion that it was not error to permit the jurors to weigh the issues of evidence with this background in mind. As to testimony stricken with instructions that it be disregarded, we feel that the court did not abuse its discretion in holding that such procedure did not constitute error sufficient to require a new trial.

Affirmed.