James POMUSH, et al., Appellants,

v.

Brian J. McGROARTY, et al., Respondents.

No. 48559.

Supreme Court of Minnesota.

Oct. 12, 1979.

Rischmiller, Wasche & Knippel and Robert Wm. Rischmiller, Minneapolis, for appellants.

Geraghty, O'Loughlin & Kenney and James W. Kenney, St. Paul, for respondents.

Heard before PETERSON, SCOTT, and KENNEDY, JJ., and considered and decided by the court en banc.

PER CURIAM.

Plaintiffs James and Gudrun Pomush, husband and wife, sued defendants Dr. Brian J. McGroarty, Dr. Everette J. Duthoy,[1] and Midway Hospital for battery and negligence in the performance of a vasectomy, allegedly without consent. A district court jury returned a verdict for defendants. Plaintiffs appeal from the order denying their post-trial motions. We affirm.

In April 1971, James Pomush consulted with McGroarty, a urologist, concerning a burning sensation he experienced during urination. Nonsurgical examination and tests indicated prostatitis (inflammation of the prostate) and hypertrophy (slight enlargement) of the prostate, for which McGroarty prescribed medication. Subsequently, Pomush experienced difficulty in urinating, whereupon he entered Midway Hospital.

At the hospital, an intravenous pyelogram[2] was performed upon McGroarty's recommendation, but the results were normal. McGroarty then suggested that a cystoscopy[3] be performed, to which Pomush consented on a surgical consent form provided by the hospital.

McGroarty also recommended that a vasectomy be done at the same time as the cystoscopy, to reduce the chance of infection. Both procedures were performed on May 25, 1971. Pomush contended at trial that he did not want and did not consent to the vasectomy surgery; however, the testimony on the issue of consent to the vasectomy was sharply conflicting. The trial judge submitted the issue to the jury by special verdict questions, which read in part as follows:

QUESTION 1: Did James Pomush consent to the surgery when performed by Dr. Brian J. McGroarty?

QUESTION 2: If your answer to Question 1 is "no," then answer this question: Was Midway Hospital negligent in its care and treatment of James Pomush?

QUESTION 3: If your answer to Question 2 is "yes," then answer this question: Was such negligence a proximate cause of the unauthorized surgery?

The jury answered the first question in the affirmative and, accordingly, did not respond to Questions Nos. 2 and 3. The jury further determined that neither James nor Gudrun Pomush had suffered damages. Plaintiffs then moved for judgment notwithstanding the verdict on the issue of liability and for a new trial on damages or, alternatively, for a new trial on both liability and damages. These motions were denied and this appeal followed.

---

1. The trial court granted defendant Dr. Everette J. Duthoy's motion for a directed verdict on all counts, and that decision was not appealed.

2. An intravenous pyelogram is a procedure designed to determine the conditions of the kidneys, ureters, and bladder. Defendant Dr. Brian J. McGroarty described the procedure as "an injection of contrast medium or dye into the vein, and that is picked up by the blood stream and it is excreted by the kidneys, and it shows up on X-rays as a density, and it shows the inside of the kidneys and the urethers [sic] and some of the bladder."

3. A cystoscopy is a procedure by which the parts of the urinary system are examined by looking though a specially-constructed instrument called a cystoscope. J. Schmidt, 1 Attorney's Dictionary of Medicine, C–200 (1978).

■ 1. Plaintiffs contend, first, that Question No. 1 of the special verdict form was improper because it did not clearly specify for the jury which surgery was the subject of the disputed consent. Since Pomush did consent to the cystoscopy, plaintiffs argue that the question should have specifically asked whether Pomush consented to the vasectomy.

We have held that R.Civ.P. 49.01 accords the trial court broad discretion in determining the form of the special verdict. *Hill v. Okay Const. Co., Inc.,* 312 Minn. 324, 340, 252 N.W.2d 107, 118 (1977). The rule further provides that "[t]he court shall give to the jury such explanations and instructions concerning the matter thus submitted as may be necessary to enable the jury to make its findings upon each issue."

We hold in this case that the reference in Question No. 1 to "surgery" rather than "vasectomy" was not misleading, for two reasons: (1) The only surgical procedure involved to which Pomush claimed he had not consented was the vasectomy; (2) the trial court's instructions, read as a whole, make clear to the jury that the vasectomy was the surgical procedure in issue. The trial court instructed:

In this action Plaintiff James Pomush claims that Defendant Doctor Brian McGroarty performed *vasectomy surgery* upon him on May 25, 1971, at Midway Hospital without his consent, thus was unauthorized and constituted a battery.

Plaintiff James Pomush also claims that employees of the Defendant, Midway Hospital, were negligent in their failure to communicate the directions to not perform such surgery to Dr. McGroarty.

Plaintiff James Pomush claims that as a direct result of the surgery he sustained injury to himself, including sexual impotency and a psychiatric condition known as depression, which are both permanent in nature.

In this action Plaintiff Gudrun Pomush claims damages to herself for the loss of consortium.

Defendant Doctor McGroarty denies that the surgery was performed without the Plaintiff's consent.

\*    \*    \*    \*    \*    \*

\* \* \* There is no evidence that the *vasectomy* was performed in a negligent manner by Dr. McGroarty. \* \* \*

There will be submitted to you a Special Verdict form, as I have previously indicated. I will read the questions to you. "Question 1: Did James Pomush consent to the surgery when performed by Dr. Brian J. McGroarty?" You are to answer that question yes or no. [Emphasis added.]

The above instructions were adequate to inform the jury that the "surgery" referred to in Question No. 1 was the vasectomy. Moreover, plaintiffs' counsel in his closing argument was careful to explain that "surgery" referred to vasectomy and that the cystoscopy was not considered a surgical procedure.

■ 2. Plaintiffs contend, second, that defendant Midway Hospital was negligent as a matter of law. The issue of the negligence of the hospital was submitted to the jury in Questions Nos. 2 and 3 of the special verdict form. At no time did plaintiffs object to the submission of those questions to the jury. Indeed, the first mention of negligence as a matter of law was in plaintiffs' post-trial motions. Plaintiffs' counsel expressly agreed during discussion of the proposed verdict questions that Midway's negligence was contingent upon a finding that Pomush had not consented to the surgery. Since the jury found in Question No. 1 that there was consent, plaintiffs have no further basis for arguing Midway's negligence, at law or otherwise.

■ Plaintiffs also contend that McGroarty was negligent as a matter of law in failing to obtain a written consent to the vasectomy. This issue was not litigated or argued by plaintiffs below, nor was there any request that the trial judge decide this issue or submit it to the jury, nor did plaintiffs raise this theory in their post-trial motions. Plaintiffs may not now raise this new theory of recovery on appeal.

3. Finally, plaintiffs argue that they are entitled to a new trial because the jury's determination that plaintiffs had suffered no damages was without support in the evidence. While there was testimony by Pomush and other witnesses as to the physical and psychological effects of the allegedly unconsented vasectomy, it was the jury's function to credit or not credit this evidence. It was not compelled by the testimony to find damages.

We need not base our decision on this ground alone, however. Plaintiffs concede that if the jury's finding of no liability is supported by the evidence, its determination as to damages, even if clearly inadequate, will not constitute grounds for a new trial. *Otterness v. Horsley,* 263 N.W.2d 403, 405 (Minn.1978). We hold that the jury's verdict was not without adequate evidentiary support, the jury having resolved the many disputes in the testimony in favor of defendants. Under our decision in *Otterness,* therefore, the jury's finding of no damages would not entitle plaintiffs to a new trial.

Affirmed.

SCOTT, Justice (dissenting).

I respectfully disagree with the majority opinion for the following reasons:

The first question asked the jury on the special verdict form read as follows:

"Did James Pomush consent to the surgery when performed by Dr. Brian J. McGroarty?"

Prior to the time the jury was charged, plaintiffs strenuously protested to the district court that the question was not sufficiently clear because it is undisputed by plaintiffs that Pomush *did* consent to the cystoscopy. Plaintiffs claim that, instead, the interrogatory should specifically have inquired whether James Pomush consented to the *vasectomy.* For example, in urging the trial court to modify its special verdict form, plaintiffs' counsel stated:

"No, wait a minute. I am not sure I understood it the way you framed your question. I am saying this, I would get exception to that verdict form as stated, because I think that the question is, under the terms of this record, is, 'Was there a valid existing consent to the vasectomy at the time that it was performed?' Now we might as well call a spade a spade. We are talking about a vasectomy, nothing else. Was there a valid existing consent to the performing the vasectomy at the time that it was performed? That is number one."

In support of their post-trial motions, plaintiffs similarly contended that the trial court erred by failing to submit the following question to the jury:

"Was there a validly existing consent on the part of the Plaintiff to the performance of the vasectomy at the time that Dr. McGroarty performed the vasectomy?"

On appeal, plaintiffs continue to argue that the question submitted to the jury was improper.

I am persuaded by plaintiffs' contention. The jury, as the finder of fact, must clearly be informed of the decisions it is asked to make. Where the questions propounded to it are ambiguous and unclear in application to the case, basic elements of a fair trial are lacking. Thus, the interrogatories posed to the jury must be clear and precise so that there is no likelihood of confusion. See, *Wolle v. Jorgenson,* 256 Minn. 462, 99 N.W.2d 57 (1959). In this case I can discern no reason for the trial court's refusal to specifically refer to the vasectomy in "Question 1." Use of the general term "surgery" in the interrogatory serves no purpose other than to confuse the jury. After all, the record discloses that Pomush did authorize the cystoscopy which was performed and arguably consented to certain surgery which was not done. The precise question for the jury's resolution was whether plaintiff consented to the *vasectomy.* To prevent the possibility of confusion on the part of the jury, the trial court should have worded the interrogatory as requested by plaintiffs.

It is also difficult to understand why the hospital's entire liability depended on

whether or not McGroarty received consent from Pomush. The wording of "Question 2" of the special verdict foreclosed a finding of negligence when the jury answered "Question 1" in the affirmative.

It is possible that Midway could be found negligent .even if Pomush had previously given his consent for a vasectomy to Dr. McGroarty. It could be argued that although Pomush had at one time authorized Dr. McGroarty to perform the vasectomy, Midway knew he had become reluctant, as the record clearly shows, and intended to or did revoke his consent. Accordingly, it can be contended that Midway, in failing to inform the doctor of the patient's reluctance, as reported in the hospital records, was negligent. Plaintiffs communicated this theory of recovery to the trial court but it was rejected.[1]

It must be emphasized that, based upon the evidence in this case, there was not only a question of consent as Question 1 of the special verdict indicates, but also a question as to whether, in any event, there was negligence in proceeding with surgery. If plaintiff's testimony is credible, it is difficult to imagine what more he could have done to prevent this vasectomy. With this in mind, appropriate questions should have been fashioned for the jury.

The majority also indicates that the jury's findings that plaintiffs incurred no damages are reasonably supported by the record. I cannot agree. A medical expert testified that the vasectomy caused Pomush to suffer from a permanent state of severe depression. In addition, many friends of Pomush testified that his personality has changed dramatically since the vasectomy. Defendants did not introduce any evidence to rebut these claims. Uncontradicted evidence also shows that these changes in James Pomush had an adverse effect on Gudrun Pomush's relationship with her husband. Accordingly, the record does not rea-sonably support the jury's determination of no damages for plaintiffs.

It seems clear that the interrogatories of the special verdict were incomplete and improper as submitted to the jury, and that the jury's decision regarding damages finds no support in the record.

I would reverse.

OTIS and TODD, JJ., took no part in the consideration or decision of this case.

---

1. Plaintiffs also raised this issue in their motion for a new trial by stating: "The evidence in this case establishes conclusively the defendant Hospital was negligent in failing to follow its established standard of care in informing Dr. McGroarty of Plaintiff's unwillingness to con-sent to a vasectomy and the modification of the surgical consent form; the evidence further establishes conclusively that said negligence was a direct cause of the resulting vasectomy and the damages." The trial court, in its memorandum, did not specifically respond to this claim.