*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0533**

Tracey Weathers, et al.,
Appellants,

vs.

HSBC Bank USA, NA,
as Trustee for GSAA Home Equity Trust 2005-6; et al.,
Respondents.

**Filed February 9, 2015
Affirmed
Reyes, Judge**

Hennepin County District Court
File No. 27CV133433

Carl E. Christensen, Christensen Law Office, P.L.L.C., Minneapolis, Minnesota (for appellants)

Charles F. Webber, Nicholas J. Nelson, Hanna L. Terhaar, Faegre Baker Daniels, L.L.P., Minneapolis, Minnesota (for respondents)

Considered and decided by Johnson, Presiding Judge; Worke, Judge; and Reyes, Judge.

**U N P U B L I S H E D   O P I N I O N**

**REYES**, Judge

Appellants challenge the district court's grant of summary judgment, arguing that the district court erred by dismissing their claims for violation of Minn. Stat. § 58.13 (2014) and for negligence per se. We affirm.

**FACTS**

In 2005, appellants Tracey and Jean Weathers purchased a home in Tonka Bay, Minnesota for $750,000. To finance their home, appellants obtained a mortgage loan from Winstar Mortgage Partners, Inc. (Winstar) in the principal amount of $600,000. To secure the loan, appellants granted a mortgage on the property to Winstar's nominee, Mortgage Electronic Registration Systems (MERS). In 2006, appellants obtained a second mortgage on their home in favor of Investment Bank Lending Group (IBLG). Although a Satisfaction of Mortgage dated October 17, 2008, indicates that the IBLG mortgage was satisfied, the satisfaction was not filed in the county recorder's office. Consequently, the mortgage still appeared as an encumbrance to the title of appellants' property during the relevant time period.

In February 2010, MERS securitized the Winstar mortgage. The ownership of the note associated with the Winstar mortgage and equitable title of that mortgage were transferred to respondent HSBC Bank USA, National Association (the Bank) as trustee for the GSAA Home Equity Trust 20056. The Bank designated respondent America's Servicing Company (ASC), a division of Wells Fargo Bank, N.A. to service the loan.[1] In the end, MERS owned the mortgage, the Bank owned the note, and Wells Fargo serviced the loan.

In 2009, appellants experienced financial hardship and stopped making monthly payments on their mortgage loan. In October 2009, Wells Fargo notified appellants of

---

[1] It is undisputed that ASC is not a separate entity from Wells Fargo. Thus, for clarity, we will refer to ASC as "Wells Fargo."

their default on their mortgage loan. In March 2010, Wells Fargo sent appellants an application for a loan modification under the Home Affordable Modification Plan (HAMP). The introduction to the application included language stating, "[i]f you qualify under the federal government's Home Affordable Modification program and comply with the terms of the Home Affordable Modification Program Trial Period Plan, we will modify your mortgage loan and you can avoid foreclosure."

Appellants submitted their application for a HAMP modification to Wells Fargo in March 2010. It is undisputed that, in their application, appellants mistakenly reported that their gross monthly income was $110,160 when that amount actually represented their gross yearly income. On July 12, 2010, appellants received a notification by letter from Wells Fargo that their application was denied because their monthly housing expense was less than 31% of their reported gross monthly income, a requirement to be eligible for a modification under HAMP. On July 14, 2010, appellants submitted a second application, and again mistakenly listed their monthly gross income as $110,160. The record does not contain any written correspondence from Wells Fargo following their submission of a second application.

Appellants allege that during the next few years, they submitted numerous applications for loan modifications and "were not approved for the HAMP program for reasons outside of the HAMP criteria and/or based solely on incorrect or incomplete information in [appellants'] file at no fault of [appellants]."

In September 2011, appellants executed a Special Forbearance Agreement (SFA) with Wells Fargo. Pursuant to the SFA, Wells Fargo agreed to forbear on the foreclosure

proceedings for a period of time, during which time appellants were required to make four payments over a period of four months. The agreement stated that "[t]his plan is an agreement to temporarily accept reduced payments or maintain regular monthly payments during the plan specified below. Upon completion of this plan, the loan must be brought current or an arrangement to satisfy the arrearage must be executed." Moreover, the agreement warned appellants that the "lender is under no obligation to enter into any further agreement, and this forbearance shall not constitute a waiver of the lender's right to insist upon strict performance in the future." The cover letter explained that the reason Wells Fargo was offering the forbearance was to give "a period for [appellant] to determine how [they] will be able to resolve [their] financial hardship."

It is undisputed that appellants made the four payments in accordance with the SFA and made two additional payments following the fourth month. Appellants assert that Mr. Weathers was informed by someone at Wells Fargo on three or four separate occasions that they would receive a loan modification because they made the four SFA payments, plus the two additional payments. They also assert that they reasonably believed a loan modification had been granted because since 2009, they received notices from Wells Fargo describing changes to their adjustable rate mortgage loan interest rate and payment. There are no written documents evidencing any agreement that appellants would receive a loan modification and Mr. Weathers acknowledged that none existed. On August 29, 2012, a foreclosure sale was held and the Bank purchased the property for $682,444.15.

4

Appellants successfully moved the district court for an emergency order to toll the redemption period until further order by the district court. Following this order, appellants filed a ten-count complaint in district court. Count IV alleged negligent misrepresentation and Count V alleged a violation of HAMP directives.[2] Appellants sought money damages against respondents, the Bank and Wells Fargo. Respondents moved for summary judgment on all ten counts, and appellants brought a cross motion for leave to file an amended complaint seeking to add a quiet title claim and a count alleging violation of what is now Minn. Stat. § 580 (2014). The district court granted summary judgment to respondents on all ten claims. Variations of Counts IV and V are the subject of this appeal.

With respect to Count V, the district court rejected appellants' claim under Minn. Stat. § 58.13, subd. 1(a)(8) (2014), finding that appellants presented no evidence that HAMP requirements were violated or that appellants were wrongfully denied a HAMP modification. With respect to Count IV, the district court rejected appellants' claim that Wells Fargo misrepresented that it was considering appellants for a potential loan modification when it actually was not, and that it misrepresented that "the loan modification had been accepted or would be accepted by [Wells Fargo]." The district court concluded that appellants' claim was barred by Minn. Stat. § 513.33, subd. 2

---

[2] The remaining counts encompassed various claims that are not relevant to this appeal.

(2014).[3] Additionally, the district court rejected appellants' negligent-misrepresentation claim for failure to demonstrate that appellants reasonably relied on any alleged misrepresentation by respondents to their detriment. This appeal followed.

## D E C I S I O N

Appellants argue that the district court erred by improperly construing the facts to favor the moving party in deciding a motion for summary judgment. Appellants also argue, for the first time on appeal, that the district court failed to recognize that appellants' claim under Minn. Stat. § 58.13, subd. 1(a)(8), also gave rise to a claim under Minn. Stat. § 58.13, subd. 1(a)(5) (2014). Finally, appellants argue, again for the first time on appeal, that their negligent-misrepresentation claim gave rise to a claim of negligence per se.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that either party is entitled to a judgment as a matter of law." Minn. R. Civ. P. 56.03.

> [T]here is no genuine issue of material fact for trial when the nonmoving party presents evidence which merely creates a metaphysical doubt as to a factual issue and which is not sufficiently probative with respect to an essential element of the nonmoving party's case to permit reasonable persons to draw different conclusions.

---

[3] Minn. Stat. § 513.33, subd. 2, provides that "[a] debtor may not maintain an action on a credit agreement unless the agreement is in writing, expresses consideration, sets forth the relevant terms and conditions, and is signed by the creditor and the debtor." The district court determined that, because a loan modification agreement is considered a credit agreement within the meaning of the statute, the absence of a written agreement between appellants and Wells Fargo precluded appellants' claim.

6

*DLH, Inc. v. Russ*, 566 N.W.2d 60, 71 (Minn. 1997). "[T]he party resisting summary judgment must do more than rest on mere averments." *Id.* On appeal from summary judgment, this court reviews the evidence de novo, in a light most favorable to the nonmoving party. *Valspar Refinish, Inc. v. Gaylord's Inc.*, 764 N.W.2d 359, 364 (Minn. 2009).

## I.

### A.     Alleged violation of Minn. Stat. § 58.13, subd. 1(a)(8)

Count V of appellants' complaint is entitled "violation of HAMP directives with private right of action pursuant to Minn. Stat. § 58.13, subd. 1(a)(8)." In relevant part, subdivision 1(a)(8) states, "[n]o person acting as a residential mortgage originator or servicer . . . shall violate any provision of any other applicable state or federal law regulating residential mortgage loans." Minn. Stat. § 58.13, subd. 1(a)(8). Appellants contend that "[p]rogram directives for HAMP have the force and effect of law such that violating those directives, whether or not a private federal cause of action exists, is a violation of Minn. Stat. § 58.13, subd. 1(a)(8)." Appellants assert that respondents did not comply with HAMP directives when they processed appellants' first and second HAMP applications. Appellants rely on two HAMP directives in their complaint. The first directive explained the requirements for an applicant to qualify for a HAMP modification. According to appellants, the second HAMP directive (Notification Directive) states that "[i]f a borrower contacts a servicer regarding a HAMP modification, the servicer must consider that request, collect income and hardship information to determine if [the] borrower is eligible for a HAMP loan modification and,

within 30 days, notify the borrower in writing of the decision." Appellants conclude that "[u]pon information and belief HSBC and [Wells Fargo] may have violated other directives when processing [appellants'] HAMP applications."

However, even if we were to construe these general assertions in a light most favorable to appellants, their claim under subdivision 1(a)(8) fails as a matter of law. There is nothing to support appellants' assertion that HAMP directives "have the force and effect of law such that violating those directives . . . is a violation of Minn. Stat. § 58.13, subd. 1(a)(8)." There is no caselaw, nor do appellants cite any, that states that HAMP directives are "state or federal law" within the meaning of subdivision 1(a)(8). Thus, the district court properly granted summary judgment as to Count V of appellants' complaint.[4]

## B.    Alleged violation of Minn. Stat. § 58.13, subd. 1(a)(5)

On appeal, appellants encourage this court to accept their argument that Count V of their complaint is more appropriately characterized as a violation of Minn. Stat. § 58.13, subd. 1(a)(5), and that it should be construed as such. Because this argument is raised for the first time on appeal, it is not properly before this court for review. *See Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988). But in certain cases, an appellate court can grant review so long as the other party is put on notice of the claims being brought against it. *See Oanes v. Allstate Ins. Co.*, 617 N.W.2d 401, 403 (Minn. 2000)

---

[4] Moreover, appellants do not appear to challenge the district court's grant of summary judgment on Count V under their original claim under subdivision 1(a)(8). Appellants appear only to challenge a grant of summary judgment if Count V of appellants' complaint alleged a claim under subdivision 1(a)(5).

(addressing issues raised for the first time on appeal "when the issue is plainly decisive of the entire controversy on its merits, and where, as in a case involving undisputed facts, there is no possible advantage or disadvantage to either party in not having had a prior ruling by the trial court" (quotation omitted)); *see also* Minn. R. Civ. App. P. 103.04 (stating that appellate courts may, in the interests of justice, address any question).

Here, it would not be appropriate to grant review of appellants' new claim on appeal of a violation under subdivision 1(a)(5). *See Antonson v. Ekvall*, 289 Minn. 536, 539, 186 N.W.2d 187, 189 (1971) (affirming the denial of a new trial where, although the pleadings were general enough to have possibly made a claim based on a particular theory, the complaint contained no language that would give notice to a claim based on that theory). Appellants did not put respondents on notice that they were alleging a violation of HAMP directives as it relates to HAMP's Notification Directive. Despite the fact that appellants' complaint included a mention of the Notification Directive in one paragraph under Count V, the remaining 36 paragraphs in appellants' fact section do not allege any specific facts tending to show a violation of the Notification Directive. Indeed, a review of appellants' own arguments in response to respondents' motion for summary judgment further reveals the lack of notice appellants provided to respondents of a claim under subdivision 1(a)(5). In their memorandum opposing summary judgment, appellants spent nearly three pages addressing the issue of whether appellants had a private right of action against a mortgage servicer under Minn. Stat. § 58.13,

subdivision 1(a)(8).[5] The only allegation appellants asserted to support their claim that there was a violation of the Notification Directive was captured in one sentence—that respondents' internal review of the application showed discrepancies as to their calculation of appellants' income. Again, absent in appellants' memorandum opposing summary judgment are any assertions of fact or allegations related to respondents' failure to send a written notification to appellants regarding their HAMP decision. This is precisely because appellants' claim at the district court was based on a different theory. Because appellants are attempting to raise the "same general issue litigated below but under a different theory," the issue is not properly preserved for appeal. *See Thiele*, 425 N.W.2d at 582. Thus, appellants' new claim under subdivision 1(a)(5) is barred on appeal.[6]

Moreover, "[a]n appellate court may not base its decision on matters outside the record on appeal, and may not consider matters not produced and received in evidence below." *Thiele*, 425 N.W.2d at 582-83. Appellants' new characterization of their claim under Count V of their complaint as a claim under subdivision 1(a)(5) would require this

---

[5] Although appellants cite to Minn. Stat. § 58.13 generally in this portion of their argument, they appear to be specifically referencing subdivision 1(a)(8) as evidenced by their repeated use of the language contained in subdivision (1)(a)(8). For example, appellants state, "Minn. Stat. § 58.13 provides that a loan servicer may not 'violate any provision of any other applicable state or federal law regarding regulating residential mortgage loans.' In other words, a violation of HAMP constitutes a violation of § 58.13."

[6] It also bears mention that appellants brought a motion to amend their complaint. However, even at that time when appellants had the opportunity to do so, they did not seek to amend the complaint to include a claim under subdivision 1(a)(5). Appellants failed to make that claim at the district court level and should not be allowed to do so in this appeal.

court to make a decision based on matters not produced and received in evidence in the district court.

## II.

Appellants next assert that their claim under Minn. Stat. § 58.13 gives rise to a claim of negligence per se. Appellants' argument here is similar to their argument above, and we reject it for the same reason. As in their claim above, appellants do not challenge the district court's judgment with respect to their negligent-representation claim under Count IV of their complaint. Instead, again for the first time on appeal, appellants urge this court to "construe the claim stylized as negligent misrepresentation to be a common-law negligence claim." Appellants are attempting to raise the "same general issue litigated below but under a different theory," thus the issue is not properly preserved for appeal. *See Thiele*, 425 N.W.2d at 582; *see also Pomush v. McGroarty*, 285 N.W.2d 91, 93 (Minn. 1979) (determining that an appellant cannot raise new negligence theories on appeal).

**Affirmed.**